EFiled: Jun 14 2018 03:29PM EDT
Filing ID 62140858
Case Number 400,2017



IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEVON K. HARGRAVES, | § | |
| | § | No. 400, 2017 |
| Defendant Below, | § | |
| Appellant, | § | Court Below:  Superior Court of the |
| | § | State of Delaware |
| v. | § | |
| | § | Cr. ID No. 1704016072  (N) |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted:  April 19, 2018
Decided:    June 14, 2018

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

### ORDER

(1)     This is the appellant's direct appeal from his conviction and sentencing in the Superior Court.  Having considered the no-merit brief and motion to withdraw submitted by the appellant's counsel under Supreme Court Rule 26(c), the State's response, and the Superior Court record, it appears to the Court that:

(2)     The appellant, Devon Hargraves, was indicted on charges of Possession of a Firearm by a Person Prohibited, Possession of Ammunition by a Person Prohibited, Carrying a Concealed Deadly Weapon, Discharge of a Firearm on a Street, Criminal Mischief, and Resisting Arrest.  Prior to trial, Hargraves' trial counsel filed a motion to suppress the evidence as illegally seized from an illegal stop.  The Superior Court held an evidentiary hearing and, on September 22, 2017,

issued a memorandum order denying the motion suppress. A copy of the Superior Court's order is attached here for reference.

(3) After the denial of the motion to suppress, Hargraves' case proceeded to a bench trial. On September 26, 2017, the Superior Court found Hargraves guilty of Possession of a Firearm by a Person Prohibited, Carrying a Concealed Deadly Weapon, and Resisting Arrest, and sentenced him to a total of twenty-four years at Level V suspended after five years for ten years of Level IV supervision suspended after six months for concurrent Level III supervision and monitoring.

(4) Hargraves' counsel on appeal has filed a no-merit brief under Rule 26(c) and a corresponding motion to withdraw. Hargraves has submitted written points, which are included in the brief. In his points, Hargraves contends that he was illegally stopped by the police and that the evidence seized as a result of that illegal stop—chiefly, a handgun from the waistband of his pants—should have been suppressed. The State has responded to Hargraves' points, the position taken by his appellate counsel, and has moved to affirm the Superior Court's judgment.

(5) When reviewing the denial of a motion to suppress evidence based on an allegedly illegal stop, we conduct a de novo review "to determine whether the totality of the circumstances, in light of the trial judge's factual findings, support a

2

reasonable and articulable suspicion for the stop."[1] In this case, having conducted the required de novo review, we conclude that the totality of the circumstances, as determined by the Superior Court in its thorough and well-reasoned order denying the motion to suppress, supports the legal conclusion that the responding police officer had reasonable and articulable suspicion to stop Hargraves.

(6) When considering a Rule 26(c) brief and an accompanying motion to withdraw, we must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for claims that could arguably support the appeal.[2] Also, we must conduct our own review of the record to determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[3]

(7) In this case, we have reviewed the record and concluded that Hargraves's appeal is "wholly without merit."[4] We are satisfied that Hargraves' appellate counsel made a conscientious effort to examine the record and the law and properly determined that Hargraves could not raise a meritorious claim on appeal. The points raised by Hargraves on appeal were raised in the motion to suppress and

---

[1] *Clay v. State*, 164 A.3d 907, 915–16 (Del. 2017) (quoting *Lopez-Vazquez v. State*, 956 A.2d 1280, 1285 (Del. 2008)).
[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[3] *Penson v. Ohio*, 488 U.S. at 82.
[4] Del. Supr. Ct. R. 26(c).

argued by his trial counsel at the evidentiary hearing. The Superior Court's memorandum order of September 22, 2017, denying the motion to suppress, is affirmed on appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgments of the Superior Court are AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Karen L. Valihura
Justice

4



# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, )
)
v. ) ID No. 1704016072
)
DEVON K. HARGRAVES )
)
Defendant. )
)
)

## MEMORANDUM ORDER DENYING MOTION TO SUPPRESS

Upon consideration of the Motion to Suppress Evidence (the "Motion") filed by Defendant Devon K. Hargraves on August 7, 2017; the State's Response to Defendant's Motion to Suppress (the "Response") filed by the State of Delaware on September 1, 2017; the evidence provided by the parties at a hearing held on September 11, 2017 (the "Hearing"); the arguments made on the Motion and Response by the parties at the Hearing; and for the reasons set forth below, the Motion is **DENIED**.

### INTRODUCTION

This is a criminal action. The State has charged Mr. Hargraves with a possession of a firearm by a person prohibited case. On April 23, 2017, persons contacted the Wilmington Police Department ("WPD"), through several 911 calls, regarding shots fired in the area of North Van Buren Street. Corporal Donald Cramer responded to the area. After arriving, Corporal Cramer attempted to stop Mr. Hargraves, who matched the description of two 911 callers. After several commands to stop, Mr. Hargraves fled from Corporal Cramer. WPD apprehended Mr. Hargraves and found a firearm in Mr. Hargraves' possession.

Mr. Hargraves filed the Motion to suppress the gun found on his person arguing (i) that Corporal Cramer seized Mr. Hargraves at the point Corporal Cramer exited his police vehicle and told Mr. Hargraves to stop; and (ii) Corporal Cramer did not possess reasonable articulable suspicion when Corporal Cramer seized Mr. Hargraves.

The State opposes the Motion. The State claims that: (i) Corporal Cramer's initial approach was an attempt at a consensual encounter; (ii) Corporal Cramer had reasonable articulable suspicion to detain Mr. Hargroves based on his flight; (iii) Mr. Hargraves resisted arrest; and (iv) officers searched Mr. Hargroves incident to a lawful arrest.

## FACTS[1]

On April 23, 2017, at least four callers reported to WPD that shots had been fired in the area of 2nd Street and North Van Buren Street. The Court had an opportunity to listen to each of the 911 calls. The first two callers did not see the shooter. The third caller told the 911 operator that the she saw the shooter pull out a gun. Further, she informed the operator that the suspect was a black male wearing a black shirt with 66 on it, a winter cap with snowflakes, and dreadlocks. She told police he was walking up Conrad Street. The fourth caller spoke Spanish and needed an interpreter. This caller first told police that the shooter was a black male with black dreads and with a number on his shirt. The caller then stated that the shooter had the number 36 on his shirt. The caller then decided that the number was 63. Finally, this same caller told the operator that the man had 66 on his shirt and that he was right in front of the police.

The Court then heard testimony from Corporal Cramer. Corporal Cramer testified that he responded to a Wilcom dispatch regarding shots fired near 217 N. Van Buren Street, Wilmington, Delaware. The dispatcher informed Corporal Cramer that the suspect was a black

---

[1] Unless otherwise noted, the facts in this section are from the Motion, the Response, and the Hearing.

2

male, wearing a black shirt with the number 66 on it, black jeans, and a black winter cap with snowflakes. Upon arriving, Corporal Cramer testified that he saw a black male with a black shirt with the number 66 on it, dark pants, and a dark knit cap with white snowflakes on it.

Corporal Cramer stopped his marked police car nearly fifteen feet from Mr. Hargraves. As Corporal Cramer exited his vehicle he said "sir stop" to Mr. Hargraves. Corporal Cramer testified that, at this point, Mr. Hargraves ignored Corporal Cramer. Corporal Cramer then told Mr. Hargraves "sir stop can I talk to you?" Corporal Cramer said that Mr. Hargraves then turned toward him, saw that he was a police officer and then turned away. Corporal Cramer then testified that he told Mr. Hargraves to "stop and show me your hands." Now, Mr. Hargraves looked at Corporal Cramer, turned around, and walked away. Next, Mr. Hargraves touched and appeared to adjust something at his waistband. Corporal Cramer testified that it is normal for people carrying a handgun without a holster to regularly touch and adjust the weapon to make sure it does not fall out of the waistband. Mr. Hargraves then began to run away from Corporal Cramer. Corporal Cramer drew his police firearm and pursued Mr. Hargraves. While running, Mr. Hargraves continued to adjust his waistband while fleeing from the police. Two officers joined the pursuit.[2]

The officers deployed their tasers multiple times and took Mr. Hargraves into custody. The officers recovered a handgun on Mr. Hargraves and charged Mr. Hargraves with (1) carrying a concealed deadly weapon, (2) possession of a weapon with a removed, obliterated or altered serial number, (3) possession, purchase, own, or control of a deadly weapon by a person prohibited, (4) discharge firearm on street, and (5) criminal mischief under $1,000.

---

[2] The testimony regarding each specific action of Mr. Hargraves to each command by Corporal was gone over a number of times at the Hearing. Give the Court's conclusion that the initial command of "stop" constituted a seizure, the Court finds any discrepancy with the testimony or how that is recorded here immaterial.

3

In the Motion and at the Hearing, Mr. Hargraves argued that Corporal Cramer lacked reasonable suspicion at the time of the seizure. Mr. Hargraves also argued that the seizure occurred as soon as Corporal Cramer ordered Mr. Hargraves to stop. In the Response and the Hearing, the State argued that: (i) Corporal Cramer's initial approach was an attempt at a consensual encounter; (ii) Corporal Cramer had reasonable articulable suspicion to detain the defendant based on his flight; (iii) Mr. Hargraves resisted arrest; and (iv) officers searched the defendant incident to a lawful arrest. At the Hearing, the parties focused on whether Corporal Cramer's initial encounter was a seizure or consensual encounter.

The Fourth Amendment to the United States Constitution and Article 1, § 6 of the Delaware Constitution prohibit unreasonable searches and seizures.[3] The Delaware Supreme Court has held that a person is seized only if, under the totality of the circumstances, a reasonable person in the same position would not feel free to "go about his business" or "ignore the police presence."[4]

The Court agrees with Mr. Hargraves that a seizure occurred when Corporal Cramer told Mr. Hargrave to "stop." Corporal Cramer is in his uniform, has just exited his vehicle and told Mr. Hargraves to "stop." At this point in time, a reasonable person in the same or similar situation would not have felt free to go about his/her business. Therefore, the Court will focus on whether Corporal Cramer had reasonable suspicion at the time he ordered Mr. Hargraves to stop.

---

[3] *Harris v. State*, 806 A.2d 119, 124 (Del. 2002).
[4] *Flonnory v. State*, 805 A.2d 854, 857 (Del. 2001).

4

Police officers may seize or detain an individual for a limited investigation if the "officer ha[s] a particularized and objective basis to suspect"[5] that the individual "is committing, has committed, or is about to commit a crime."[6] Delaware codified this reasonable suspicion standard in 11 *Del. C.* § 1902. This Court has explained that reasonable suspicion is evaluated by the totality of the circumstances "as viewed through the eyes of a reasonable, trained police officer in the same or similar circumstances, combining objective facts with such an officer's subjective interpretation of those facts."[7]

The United States and Delaware Supreme Courts have held that certain anonymous tips lack enough reasonable suspicion to allow an officer to perform an investigatory stop. "If an officer does not observe any violations prior to the stop, this Court must decide whether the tip contained sufficient indicia of reliability to support a stop on the basis of the tip alone."[8] In *Florida v. J.L.*, an anonymous tipster told police that there was "a young black male standing at a particular bus stop and wearing a plaid shirt . . . carrying a gun."[9] The U.S. Supreme Court determined that this tip was insufficient to justify a stop and frisk of the defendant. The Court reasoned that the informant did not demonstrate knowledge of concealed criminal activity.[10]

Similarly, in *Jones v. State*, the police received an anonymous tip that reported a "suspicious black male wearing a blue coat" had been in the same location for some time.[11] An officer responded and told the defendant to stop and remove his hands from his pockets.[12] The

---

[5] *Lopez-Vazquez v. State*, 956 A.2d 1280, 1288 (Del. 2008).
[6] *Woody v. State*, 765 A.2d 1257, 1262 (Del. 2001).
[7] *Jones v. State*, 745 A.2d 856, 861 (Del. 1999).
[8] *Guilfoil v. State*, 3 A.3d 1097, 2010 WL 3489906, at *3 (Del. 2010) (quoting *Bloomingdale v. State*, 842 A.2d 1212, 1219 (Del. 2004)) (internal quotations omitted).
[9] 529 U.S. 266, 268 (2000).
[10] *Id.* at 272.
[11] *Jones*, 745 A.2d at 858.
[12] *Id.* At 859.

defendant threw cocaine and the officer arrested the defendant.[13] The Delaware Supreme Court found that the 911 call did not have a sufficient indicia of reliability to allow the officer to seize the defendant without further corroboration.[14]

However, a tip of readily observable criminal activity may not require police corroboration. In *Bloomingdale*, a tipster called 911 and told the operator that the driver was "all over the roadway near James Street and Route 141."[15] The Court found that the officer had reasonable suspicion to stop the defendant. The Court reasoned that "an anonymous report of contemporaneously-observed [criminal activity] does not suffer from the same lack of indicia of reliability"[16] as tips reporting "concealed, possessory offenses[s] because the [readily observable] offense[s] are carried out in the public and may be observed by any passerby."[17] Further, tipsters reporting readily observable crimes do not require "inside information or special basis of knowledge for [the] conclusion that criminal activity is occurring."[18]

Further, in *State v. Johnson*, a caller reported to Wilmington police dispatch that she saw a fight near 30th and Jefferson Street.[19] The caller told police that one suspect was a black male with dark complexion and a beard wearing a blue or black baseball cap and a navy blue shirt.[20] She further informed dispatch that the suspect had a gun.[21] A police officer saw the defendant matching the description of the suspect.[22] The officer exited his marked police car, drew his weapon. and ordered the defendant on the ground.[23] This Court ruled that the officer had

---

[13] *Id.*
[14] *Id.* At 871-72.
[15] *Bloomingdale*, 842 A.2d at 1213.
[16] *Id.* at 1219.
[17] *Id.*
[18] *Id.*
[19] 2011 WL 300247, at *1 (Del. Super. Jan. 18, 2011).
[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Id.*

6

reasonable suspicion to stop the defendant.[24] The *Johnson* Court reasoned that the "defendant was the only individual in the area matching the description provided, and the anonymous 911 caller had provided sufficiently detailed information to prevent an improper random stop."[25]

Corporal Cramer had reasonable suspicion to detain Mr. Hargraves when he exited his marked police car. Multiple witnesses called 911 reporting gunfire. Two witnesses provided sufficiently detailed descriptions of the shooter and his clothing. Further, one caller said she saw Mr. Hargraves holding the gun. The situation involved reporting a readily observable crime.

WPD dispatch relayed a description to officers on patrol. WPD dispatch indicated that the shooter was a black male with dreadlocks, wearing a black shirt marked 66, and a dark winter cap with snowflakes. Wilmington dispatch's description of the shooter was sufficiently detailed to prevent an improper random stop. Corporal Cramer testified that he heard the description of shooter from Wilmington dispatch. Corporal Cramer saw a black male with dreadlocks, a black shirt with 66 on it, and a winter cap with snowflakes in summer weather. Corporal Cramer pulled his marked patrol car nearly fifteen feet from Hargraves. As he exited his vehicle, Corporal Cramer told Mr. Hargraves to stop. At this point, Corporal Cramer executed a stop with reasonable suspicion that Mr. Hargraves had committed a crime. This readily observable crime and detailed description of the shooter provided Corporal Cramer reason to stop Mr. Hargraves.

---

[24] *Id.*
[25] *Id.*

7

## CONCLUSION

For the above reasons, the Court finds that there was reasonable suspicion to stop Mr. Hargraves based on the information provided to police in the 911 calls and relayed to the officers from their dispatch. The conduct of Mr. Hargraves subsequent to the initial command of stop— *i.e.*, the adjusting the waistband, the fleeing from the scene, the continuing adjustment of the waistband, the discovery of the firearm on Mr. Hargraves during the search—demonstrate additional facts that support probable cause for the arrest.

**IT IS HEREBY ORDERED** that the Motion is **DENIED.**

Dated: September 22, 2017
Wilmington, Delaware

Eric M. Davis, Judge

2017 SEP 22 PM 2: 19

FILED NCC PROTHO. BY

8